UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHELLE L. BAILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 3:08-CV-332 PPS |
| ) | |
| PREGIS INNOVATIVE PACKAGING, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

For people who are seriously ill or have demanding family needs, it can be difficult to balance responsibilities at work and at home. In order to ease the burden on these individuals, Congress enacted the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, which requires employers to give eligible employees 12 weeks of leave per 12-month period for qualifying reasons. In July 2005, Michelle Bailey needed to take over four months off from her job at Pregis Innovative Packaging due to a high risk pregnancy. A year later – in July 2006 – Bailey requested FMLA leave for a second pregnancy. But because she was no longer eligible and had used up all her FMLA leave in the previous 12 months, Pregis denied her request. To make matters worse, Bailey had also used up the number of absences she was allowed under Pregis's attendance policy. So after Bailey missed a couple days of work, Pregis fired her for excessive absenteeism. This lawsuit followed. Bailey asserts claims of interference and retaliation under the FMLA. Pregis has moved for summary judgment on those claims. (DE 23.) For the following reasons, Pregis's motion is granted.

# I. BACKGROUND

Like most employers, Pregis expects its employees to show up for work each day. To achieve this goal, Pregis has implemented a strict attendance policy. (DE 26-8.)[1] The policy is based on a point system: An employee is charged one point for each day of unexcused absence. If the employee is absent for more than one consecutive day, and provides a doctor's note upon her return, she is charged only one point for that period of absence. (*Id.*) An employee is charged one-half point for coming to work 0-2 hours late or leaving work 0-2 hours early. (*Id.*) If an employee accumulates 8.5 points in a 12-month period, the employee will be discharged. (*Id.*) The 12-month period is rolling, but any approved leaves of absence – such as worker's compensation, short-term disability, or approved FMLA leave – tolls the period. (*Id.*) Pregis uses a third-party leave administrator to approve leaves of absence and to monitor compliance with the attendance policy. (DE 26-4 ¶¶ 17-18.) Since 2005, Pregis has terminated 59 employees in its Plymouth, Indiana facility – the same facility where Bailey worked – for excessive absenteeism. (*Id.* ¶¶ 10-11.)

Pregis is also subject to the FMLA, which requires employers to grant their employees 12 weeks of leave per 12-month period for certain life events, such as a serious health condition, incapacity due to pregnancy, or the birth and care of a child. 29 U.S.C. § 2612; *Ryl-Kuchar v. Care Ctrs., Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009). A serious health condition is one that

---

[1] The Parties have filed numerous exhibits for the Court's consideration of these motions. To avoid confusion, I have cited to the docket entry ("DE") number and page number as the record appears in the CM/ECF system. Where I have cited to a deposition transcript, I have also included the transcript ("Tr.") page number.

involves inpatient care in a health facility or continuing treatment by a health care provider. 29 U.S.C. § 2611(11).

Bailey began working for Pregis in December 2003. (DE 26-2 at 14, Tr. 48.) From 2005 onward, Bailey missed a substantial amount of work, both for approved and unapproved purposes. In January 2005, Bailey used four days of FMLA leave. (DE 26-2 at 11, Tr. 36; DE 26-10.) Beginning July 20, 2005, Bailey took an extended FMLA leave due to her first pregnancy. (DE 26-2 at 23, Tr. 85; DE 26-15.) On July 29, 2005, Pregis's leave administrator informed Bailey that her 12 weeks of FMLA leave would be exhausted 56 days later on October 7, 2005. (DE 26-18.) Bailey understood at the time that her pregnancy leave exceeded the amount of leave she was entitled to under the FMLA, and this meant her job was not automatically protected after October 7. (DE 26-2 at 24-25, Tr. 89-91.) Bailey gave birth on October 18, 2005. (*Id.* at 18, Tr. 63.) She didn't return to work until November 28, 2005. (DE 26-16.) Bailey received short-term disability benefits for the duration of her leave of absence. (DE 26-4 ¶ 21; DE 26-17.) Because she exceeded her FMLA leave – and had a doctor's note excusing her consecutive days of absence – she was charged one point under Pregis's attendance policy. (DE 26-12.)

Bailey racked up several more points during this time period. In April 2005, Bailey was charged one point for missing three days of work due to illness. (DE 26-2 at 42, Tr. 158-60; DE 26-11; DE 26-12.) On July 6, 2005, Bailey received one-half point for leaving work early. (DE 26-12.) Two days later, on July 8, she incurred another point for skipping work due to illness. (*Id.*) From December 2005 through April 2006, Bailey racked up another four points for missing

work or leaving early. (*Id.*; DE 26-19; DE 26-20; DE 26-21; DE 26-22; DE 26-24.) These incidents elevated her point total to 7.5 as of April 20, 2006. (DE 26-12.)

Bailey insists that the points for the July 6 and July 8 absences were improperly assessed. According to her, these absences should have been part of her FMLA pregnancy leave. (DE 26-2 at 17, Tr. 58.) But the doctor's note Bailey submitted to Pregis only prescribed FMLA leave beginning on July 20. (DE 26-15.) Bailey admits she has no documentation or other proof from her doctor prescribing FMLA leave before July 20, 2005. (DE 26-2 at 17, Tr. 60-61.)

All of which brings us to the reason Ms. Bailey was fired. She was out of leave. But on July 17, 2006, Bailey – who was pregnant again – left work early to see her doctor. She showed up to work two days later with a doctor's note indicating she had a serious medical condition. (DE 26-26.) But Pregis determined that Bailey was no longer eligible for FMLA leave at that time. (DE 26-4 ¶¶ 25, 28.) Therefore, they charged her with one point for her absence on July 17-18. (DE 26-12.) This put Bailey over the 8.5 point limit for the previous 12-month rolling period. (*Id.*) (Recall that the 12-month period doesn't accrue during FMLA leave.) So on July 21, 2006, Pregis terminated Bailey's employment for excessive absences in violation of its attendance policy. (DE 26-30.)

On July 18, 2008, Bailey filed this lawsuit against Pregis alleging interference with her FMLA rights and retaliation for asserting her FMLA rights. Pregis now seeks summary judgment on both claims.

## II. DISCUSSION

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 618, 625 (7th Cir. 2001). When examining the record, the court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

Bailey first alleges that Pregis interfered with her FMLA rights by denying her protected FMLA leave on July 17-18, 2006. To prevail on an interference claim, a plaintiff must demonstrate that: (1) she is eligible for FMLA protection; (2) her employer is covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled. *Ryl-Kuchar*, 565 F.3d at 1030. Pregis argues that Bailey fails on the first and third elements.

To be eligible for FMLA protection, an employee must have been employed: (a) for at least 12 months by the employer from whom leave is requested; and (b) for at least 1,250 hours of service with that employer during the 12-month period preceding the commencement of the requested leave. 29 U.S.C. § 2611(2); 29 C.F.R. § 825.110(a). Neither side disputes that Bailey had been employed by Pregis for well over 12 months when she requested leave. But the parties disagree on whether Bailey rendered 1,250 hours of service in the year preceding the date of her requested leave. Bailey's time cards indicate that, from July 16, 2005 to July 16, 2006, Bailey worked 1,130.5 hours – just shy of the 1,250 mark. (DE 26-32.) Bailey wants to count an additional 156 hours of paid vacation and holiday time during that span, which would put her just over 1,250 hours. (*Id.*) However, only "compensable" work hours – as construed under the

Fair Labor Standards Act – count towards the 1,250 hour calculation. 29 C.F.R. § 825.110(c)(1). Paid vacation time, holidays, and sick days do not count. 29 U.S.C. § 207(e)(2); 29 C.F.R. 785.16; *Lyon v. N.E. Indep. Sch. Dist.*, 277 Fed. Appx. 455, 456 (5th Cir. 2008). Therefore, Bailey was ineligible for FMLA protection as of July 17, 2006.

But even if Bailey was covered by the FMLA, she was not entitled to such leave because she used up her 12 weeks of leave in the preceding 12 month rolling period. Bailey started her FMLA leave for her first pregnancy on July 20, 2005, less than a year before she requested leave for her second pregnancy. She remained on leave for more than 18 weeks, through November 28, 2005 – over six weeks past her 12-week entitlement. Pregis chose not to terminate her when she returned, but they were under no obligation to grant her leave until she started re-accruing FMLA leave time. 29 C.F.R. § 825.200(c).

Bailey insists that she didn't use up her 12 week entitlement because Pregis's leave administrator informed her that her FMLA leave would expire on October 7, 2005 – about 11.5 weeks after her leave started on July 20. She is apparently under the mistaken impression that she was only being charged for 11.5 weeks of FMLA leave. Bailey misses the point. The leave administrator's letter simply informed Bailey that her FMLA leave entitlement would run out for that 12-month rolling period on October 7, 2005, because she had already taken four days in January 2005. (DE 26-18.) The letter did not say that any additional FMLA absences wouldn't be counted against her in the future. Since Bailey took another six weeks off for her pregnancy, she far surpassed the 12-week limit for the rolling period as of July 2006. 29 C.F.R. § 825.200(c); *see also* 29 C.F.R. 825.300(c) ("All FMLA absences for the same qualifying reason are considered a single leave.").

6

Bailey also contends Pregis fired her in retaliation for asserting her FMLA rights. An employee claiming FMLA retaliation may make her case under the familiar direct or indirect methods of proof used in Title VII cases. *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009). To prevail under the direct method, Bailey must offer evidence that "her employer intended to punish her for requesting or taking FMLA leave." *Id.* Under the indirect method, Bailey must demonstrate that "she was treated differently from similarly situated employees who did not request FMLA leave, even though she was performing her job satisfactorily."[2] *Id.*

Bailey's evidence under the direct method is very thin. First, Bailey points to the fact that she asked for FMLA leave on July 19, 2006 and was fired two days later. She argues that this suspicious timing demonstrates that Pregis fired her with "extreme haste" after she asked for FMLA leave and without fully verifying her FMLA leave entitlement. (DE 27 at 19.) To make her case, Bailey points me to a July 19-20 email exchange between Pregis's Human Resources Manager (Steven Gorski) and Bailey's supervisor (Charlie Vinopal):

> GORSKI: We have an employee, Michelle Bailey, who has reached 8.5 attendance points. Our policy is anything in access [sic] of 8-points is discharge. Michelle was on FMLA leave last year starting July 20, 2005. Michelle has exhausted her 12 weeks of leave on 10/07/2005. Michelle has stated she will again file for FMLA for the days she missed on 7/17 - 7/18 of this month. . . . Michelle did submit a Doctor's note for the 17th and 18th stating "pt. unable to work 07/18/06 due to a serious medical condition." Should I wait for verification from Case-By-Case [Pregis's leave administrator] before termination?
>
> VINOPAL: We need Case-By-Case review on this. Given the timing, I don't know if this would qualify as FMLA because it was less than a year from her

---

[2] In her Response Brief, Bailey characterizes her claim as "disability-based discrimination." This has to be a typo. Nowhere in her Complaint does she allege disability discrimination under the Americans with Disabilities Act. So the Court does not construe this as an ADA lawsuit.


>previous FMLA start on 7/20/05. I have copied Jan at Case-By-Case to expedite
>her review.

(DE 26-28.) Nothing in this email exchange remotely suggests pretext or a discriminatory reaction to a request for FMLA leave. This exchange actually proves *Pregis's* point – that it exercised caution, waited a couple of days, and sought verification from its leave administrator before making its termination decision. And it is not surprising that Case-By-Case verified the FMLA exhaustion fairly quickly since she used up one and a half times her maximum allowable leave entitlement for the previous year. Without more, the "short" time frame fails to create a triable issue. *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) ("[M]ere temporal proximity is not enough to establish a genuine issue of material fact.").

Second, Bailey argues that Pregis's failure to count July 6 and 8 of 2005 under her first FMLA pregnancy leave demonstrates discriminatory intent. To obtain FMLA leave, an employee must notify her employer of the need for leave at least 30 days in advance of the leave or "as soon as practicable." 29 C.F.R. §§ 825.302-.303. It is undisputed that Bailey gave Pregis a doctor's note prescribing pregnancy beginning on July 20, 2005. (DE 26-15.) Two years later, Bailey "thinks maybe" she also requested the July 6 and 8 dates. (DE 26-2 at 21, Tr. 76.) But she admits she has no evidence that she ever gave notice for these dates or that she ever provided a doctor's note certifying a need for leave on these dates. (*Id.* at 17, Tr. 60-61.) Without any notice or certification, Pregis was entitled treat these absences as non-FMLA events. Bailey's cloudy recall that she may have requested those additional dates contradicts all of the evidence in the record and is too flimsy to create an issue of fact. And to the extent she claims that Pregis's failure to designate these absences as FMLA leaves amounts to interference, such a claim would be time-barred under FMLA's two year statute of limitations. 29 U.S.C. § 2617(c).

Bailey also fails to establish a prima facie case under the indirect method.  She doesn't identify any similarly situated colleagues who were treated differently because they didn't ask for FMLA leave.  In fact, the record indicates that Pregis uniformly fired employees in its Plymouth facility – 59 since 2005 – for violating the same attendance policy. (DE 26-4 ¶¶ 10-11.)  Nor can Bailey demonstrate that she was meeting Pregis's legitimate business expectations.  Bailey accrued 8.5 absence points in a rolling 12-month period.  As explained above, there is no evidence that any of these points were assessed improperly as a pretext for discrimination.  Therefore, Bailey's FMLA retaliation claim must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 23] is **GRANTED**.  The Clerk shall **ENTER FINAL JUDGMENT** in favor of the Defendant Pregis Innovative Packaging, Inc. and against Plaintiff Michelle L. Bailey.  The Clerk shall treat this civil action as **TERMINATED.**  All further settings and deadlines in this action are hereby **VACATED.**

**SO ORDERED.**

ENTERED: September 14, 2009

                                     s/ Philip P. Simon
                                    PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT